IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| RHONDA KAY PHILLIBER, | ) | Case No. 05-31989 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| NORMAN E. ROUSE, Chapter 7 Trustee, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| GREEN TREE SERVICING, LLC, Loan | ) | Adversary No. 07-3041 |
| Servicer for Wilshire Credit Corp. d/b/a | ) | |
| Wilshire Mortgage Corp., and | ) | |
| | ) | |
| WILSHIRE CREDIT CORP. d/b/a | ) | |
| WILSHIRE MORTGAGE CORP., | ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM OPINION**

In this adversary proceeding, the Chapter 7 trustee, Norman E. Rouse ("Trustee"), seeks to avoid Wilshire Credit Corp.'s allegedly unperfected lien on a manufactured home owned by the Debtor. Wilshire maintains that it perfected its lien by delivering an "Application for Missouri Title" to the Missouri Department of Revenue ("MoDoR") on November 20, 1998.[1] The Trustee, on the other hand, argues that Wilshire's lien is unperfected because MoDoR rejected Wilshire's Application. The facts in this case are not in dispute; thus, the sole issue before the Court is whether the delivery of an Application for Missouri Title that is rejected by the state agency is sufficient to perfect a lien on a manufactured home under Mo. Rev. Stat. § 700.350. For the reasons stated below, the Court determines that it is not, that as a consequence Wilshire's lien was never perfected, and that the Trustee may avoid Wilshire's unperfected lien on the Debtor's manufactured home.

---

[1] In its pleadings and at the hearing on this matter, Wilshire actually stated that it filed a "Notice of Lien," but the document submitted into evidence is an Application for Missouri Title. As discussed below, the difference is not inconsequential.

**FACTUAL BACKGROUND**

On July 2, 1997, the Debtor Rhonda Philliber and Webster Philliber (who is not a party to these proceedings) entered into a "Manufactured Home Retail Installment Contract And Security Agreement" for the purchase of a 1998 Four Seasons Fortress Manufactured Home, bearing serial number FH102465 ("Manufactured Home"). The seller of the Manufactured Home assigned the installment contract to Green Tree Financial Corp. ("Green Tree"), and Rhonda and Webster Philliber executed a Limited Power of Attorney appointing Green Tree as their attorney-in-fact to apply for a Missouri Certificate of Title on the Manufactured Home. On August 1, 1997, MoDoR issued a Certificate of Title noting Green Tree as a lienholder.

On August 28, 1998, the Debtor entered into an agreement with Wilshire to refinance the installment contract with Green Tree. Pursuant to that agreement, Wilshire paid Green Tree in full, and Green Tree released its lien on the Manufactured Home on October 9, 1998. Webster Philliber was not a party to the refinancing agreement, but he and the Debtor both executed documents appointing Wilshire as their attorney-in-fact to "sign papers and documents that may be necessary in order to secure Missouri registration of or to transfer my/our interest" in the Manufactured Home. Apparently, the Debtor and Webster Philliber intended to remove Webster's name from the title to the Manufactured Home. To that end, Webster executed an affidavit stating in pertinent part: "Webster Philliber is being removed from the title of the Mobile Home since he will no longer be a co-signer for the loan. Rhonda Philliber will be the sole borrower and only owner listed on the title."

On November 20, 1998, Wilshire delivered an "Application for Missouri Title and License" to MoDoR (Motor Vehicle Bureau). Wilshire attached to the Application the then (and still) current Certificate of Title and Webster Philliber's affidavit. MoDoR stamped the Application as received on November 20, 1998,[2] but it rejected it some time thereafter because neither Webster Philliber – nor Wilshire on behalf of Webster – signed the back of the title attached to the Application. The existing title was in Rhonda and Webster Philliber's name, and the Application for title Wilshire submitted sought the issuance of a title (with Wilshire's lien noted) in Rhonda's name alone.

---

[2] Wilshire also states that the application was "bates-stamped" on November 24, but the Court is unable to confirm this due to the poor reproduction of the Application.

According to the deposition testimony of Finida Johnson, a supervisor of records at MoDoR, the department's policy requires a signature on the back of a title to transfer ownership; an affidavit such as the one Wilshire obtained from Webster Philliber was not sufficient, even if it contained the same information, *i.e.*, the affiant's intent to transfer ownership.

The records produced by MoDoR indicate that a "courtesy letter" was sent to Wilshire on December 14, 1998, notifying it that its Application for Title had been rejected, but Wilshire denies ever receiving such a letter. Nevertheless, no new Certificate of Title was ever issued in response to Wilshire's Application. The current Certificate of Title on the Manufactured Home shows that the owners are Rhonda and Webster Philliber and that Green Tree's lien has been released; no other lienholders are noted.

## DISCUSSION

Section 544 of the Bankruptcy Code gives the Trustee authority to avoid liens that are unperfected as of the petition date.[3] The status of a lien is determined by state law.[4] In its pleadings and at trial, Wilshire referred to the current version of Mo. Rev. Stat. § 700.350(3) as the controlling law, but that version of the statute did not go into effect until July 1, 2003, nearly five years after Wilshire filed its Application for Title on the Manufactured Home. The version of § 700.350 in effect at the time of the transaction (November 1998), provided in pertinent part:

> A lien or encumbrance on a manufactured home is perfected by the delivery to the director of revenue, by the owner, of the existing certificate of ownership, if any, an application for a certificate of ownership containing the name and address of the lienholder and the date of his security agreement, and the required certificate of ownership fee. Such lien or encumbrance shall be perfected as of the time of its creation if the delivery of the items required in this subsection to the director of revenue is completed within thirty days thereafter, otherwise such lien or encumbrance shall be perfected as of the time of the delivery.[5]

The current version, which became effective in 2003, reads:

---

[3] 11 U.S.C. § 544.

[4] *See In re Marlar*, 252 B.R. 743, 752 (B.A.P. 8th Cir. 2000). *See also*, 5 Lawrence P. King, *Collier on Bankruptcy* ¶ 544.02, at 544-5 (15th ed. 2003) (the extent of the trustee's strong arm powers is defined by the state law governing the property in question).

[5] Mo. Rev. Stat. § 700.350.3 (West 1989).

3

> A lien or encumbrance on a manufactured home is perfected by the delivery to the director of revenue of a notice of lien in a format as prescribed by the director of revenue. Such lien or encumbrance shall be perfected as of the time of its creation if the delivery of the notice of lien required in this subsection to the director of revenue is completed within thirty days thereafter, otherwise such lien or encumbrance shall be perfected as of the time of the delivery. A notice of lien shall contain the name and address of the owner of the manufactured home and the secured party, a description of the manufactured home, including any identification number and such other information as the department of revenue shall prescribe. A notice of lien substantially complying with the requirements of this section is effective even though it contains minor errors which are not seriously misleading. . . .[6]

Wilshire contends that it did everything required under the law to perfect its lien on the Manufactured Home, but Wilshire's argument is flawed. The version of § 700.350 on which Wilshire relies differs significantly from the version in effect in 1998, and the statute (regardless of which version is relied on) contemplates the delivery of a *valid* Application for Title. In this instance, Wilshire's Application was rejected as defective and Wilshire, though it had the power to do so, never corrected the defect.

The first significant difference between the two versions of § 700.350 relates to the documents necessary to perfect a lien on a manufactured home. The current version of the statute requires the delivery of a "Notice of Lien" as the means to perfect a lien on a manufactured home, whereas the prior version of the statute required the delivery of the "existing certificate of ownership, if any, an application for a certificate of ownership containing the name and address of the lienholder and the date of his security agreement, and the required certificate of ownership fee."[7]

This difference undermines Wilshire's argument that the defect in the Certificate of Title attached to (what it calls) its "Notice of Lien" didn't affect the effectiveness of the notice because it contained all of the information required by the current version of the statute, *i.e.*, "the name and address of the owner of the manufactured home and the secured party, [and] a description of the

---

[6] Mo. Rev. Stat. § 700.350.3 (West 2008).

[7] *Id.*

4

manufactured home, including any identification number. . . ."[8]  Although Wilshire accurately describes the information required for an effective Notice of Lien, Wilshire didn't file a Notice of Lien (and couldn't have inasmuch as that provision didn't exist in 1998).  Rather, it filed an Application for Title,[9] as was required by the prior version of § 700.350, and that version also required the delivery of an existing certificate of ownership, so the validity of that document was critical to the effectiveness of the submission.  The certificate of ownership Wilshire submitted was invalid because Webster Philliber's signature was missing.  Therefore, the "Notice" Wilshire filed was deficient under the terms of the statute and was ineffective to perfect Wilshire's lien.

The second significant difference between the two versions of § 700.350 is that the prior version did not provide a safe harbor for "minor errors which are not significantly misleading," so Wilshire cannot seek protection under that provision.

Regardless of the version of § 700.350 that is applied, the Court declines to accept Wilshire's argument that the rejection of its Application for Missouri Title was irrelevant.  Acceptance of a valid and proper Notice of Lien or Application for Missouri Title is implied in the statute.  Interpreting the statute to confer perfection on a lien by a filing that has been rejected by MoDoR would violate the clear text and the purpose of the statute.  As for Wilshire's argument that equitable considerations would support a finding that the lien was perfected, Wilshire should have known that something was amiss when it did not receive a Certificate of Title within a reasonable time after submitting the Application. Moreover, Wilshire arguably had actual knowledge of the rejection, inasmuch as MoDoR sent it a letter notifying it of that fact.  But Wilshire took no action to correct the situation, even though it had the ability to do so as Webster Philliber's attorney-in-fact with the power to sign Webster's name to the Certificate of Title.  Ten years is more than ample time to correct such a defect.

In summary, neither the statute nor equity supports a finding that Wilshire perfected its lien

---

[8] *Id*.

[9] The current version of § 700.350is silent on the ability of a creditor to perfect its lien by filing an Application for Title, but it appears that Mo. Code. Regs. Ann. § 10-23.446 permits such a filing: "A notice of lien for a motor vehicle, trailer, manufactured home, all terrain vehicle, boat or outboard motor shall be in a form or electronic format provided or approved by the director of revenue entitled "Notice of Lien" *or on the title application of ownership* is not transferred by marking the Notice of Lien box." (emphasis added) An Application for Title would still need to be accompanied by a valid certificate of ownership, though.

in the Manufactured Home.

## CONCLUSION

Under 11 U.S.C. § 544(a), the Trustee has the authority to avoid a lien that is unperfected under state law. For the reasons stated above, Wilshire's lien on the Debtor's 1998 Four Seasons Fortress Manufactured Home, Manufacturer's Serial No. FH102465, was, as of the petition date, unperfected under Missouri law. Therefore, the Trustee may avoid Wilshire's lien in the Manufactured Home.

By agreement of the parties, the Complaint against Green Tree Servicing, LLC, will be dismissed, inasmuch as it no longer has an interest in the Manufactured Home.

A separate order consistent with this Memorandum Opinion will be entered pursuant to Fed. R. Bankr. P. 9021.

**ENTERED** this 2nd day of June 2008.

                                                /s/   Jerry W. Venters
                                                United States Bankruptcy Judge

A copy of the foregoing mailed electronically or
conventionally to:
Norman E. Rouse
Michael A. Gould